## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| GARY THOMAS, derivatively on behalf of EMCORE CORPORATION, ) ) ) ) Plaintiff, ) ) v. ) ) THOMAS J. RUSSELL, ROBERT BOGOMOLNY, ) CHARLES T. SCOTT, JOHN GILLEN, REUBEN ) F. RICHARDS, JR. HONG Q. HOU and ) EMCORE CORPORATION, ) ) Defendants, ) ) EMCORE CORPORATION, ) ) Nominal Defendant. ) ) | Civil Action No. _____ |

## VERIFIED DERIVATIVE COMPLAINT

Plaintiff, pursuant to Rule 23.1, Fed. R. Civ. P., by his undersigned attorneys, allege upon personal knowledge as to themselves and their acts, and upon information and belief as to all other matters, as follows:

## NATURE OF ACTION

1. Plaintiff brings suit derivatively on behalf of Emcore Corporation ("Emcore" or the "Company"), seeking to recover damages for harms caused to the Company by its directors and senior officers. These directors and officers breached their fiduciary obligations to the Company by taking part in or allowing the Company to violate the federal securities laws. This action relates to

1

the Company's claimed backlog in terrestrial solar technology and its contractual agreement with Green and Gold Energy ("GGE").

## JURISDICTION AND VENUE

2.     Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332. The amount in controversy exceeds $75,000. Venue is proper in this district because nominal defendant Emcore is headquartered in Albuquerque, New Mexico, which is in this district. This action is not a collusive one to confer jurisdiction on the court that it would otherwise lack.

## THE PARTIES

3.     Plaintiff Gary Thomas is a citizen of the Sate of Florida. Plaintiff owned and held shares of Emcore common stock during the relevant times complained of herein, and still own shares of Emcore stock.

4.     Defendant Thomas J. Russell, Jr. ("Russell") is a citizen of the State of New Mexico, and at all relevant times was, the Chairman of the Board of Emcore.

5.     Defendant Robert Bogomolny ("Bogomolny") is a citizen of the State of Maryland, and at all relevant times was, a Director of the Company.

6.     Defendant Charles T. Scott ("Scott") is a citizen of the State of Kansas, and at all relevant times was, a Director of the Company.

7.     Defendant John Gillen ("Gillen") is a citizen of the State of New Mexico, and at all relevant times was, a Director of the Company.

8.     Defendant Reuben F. Richards, Jr. ("Richards") is a citizen of the State of California, and at all relevant times was, a Director of the Company.

9. Defendant Hong Q. Hou, Ph.d ("Hou") is a citizen of the State of California, and at all relevant times was, a Director of the Company.

10. The "Individual Defendants" refers to all of the defendants, except nominal defendant Emcore.

11. Nominal Defendant Emcore is incorporated in New Jersey, and maintains its principal executive offices at 10420 Research Road SE Albuquerque, New Mexico 87123. Emcore was founded in 1984.

## SUBSTANTIVE ALLEGATIONS

*Background & Overview*

12. On March 18, 2008, it was reported that GGE was unable to afford to pay for its orders or otherwise complete its agreements with Emcore. GGE was Emcore's largest customer and accounted for approximately $78 million of Emcore's $86 million order backlog in terrestrial solar technology.

13. Emcore knowingly obscured the full extent of its problems resulting from GGE's inability to pay for its orders or otherwise complete its agreements with Emcore.

14. Industry analysts and investors relied on the order backlog Emcore reported in its terrestrial solar business as an indicator of its future profitability, which determined the Company's stock price. The market was focused on the Company's photovoltaics segment where growth was expected, especially in the terrestrial solar market. Photovoltaics is the field of technology and research related to the application of solar cells for energy by converting sunlight directly into electricity.

15. On November 16, 2007, the investment firm Canaccord Adams stated it was positive on Emcore, giving Emcore a buy rating and raising the Company's price target to $14 from $12.50.

16. On December 19, 2007, Canaccord Adams raised Emcore's price target to $16 per share, citing "strong visibility and growth" in Emcore's photovoltaics business.

17. On January 24, 2008, Canaccord Adams reiterated its buy rating stating "Emcore "stand[s] out among its peers as a company with growing backlog of wins."

18. On March 4, 2008, Oppenheimer & Co. issued a "Perform" rating for Emcore stock by stating: "The major catalyst for shares is terrestrial solar, with Emcore announcing a number of significant deals expected to ramp in CY08/CY09.  These deals validate Emcore's technology, provide a big potential revenue stream, and are prompting the company to evaluate a solar spinout.  Note that estimates could prove conservative as one potential large deal has not been factored into our guidance.  Yesterday we hosted a call with EMCORE management to discuss some of the recent activity in the company's solar initiatives."

19. On March 18, 2008, news of Emcore's problem with its customer GGE caused Emcore' stock price to drop over 23% from $8.83 per share to $6.78 per share.

## FALSE & MISLEADING STATEMENTS

20. During the Class Period, the Company made false and misleading statements about the value of Emcore's order backlog and the quality of its purported terrestrial CPV customers, including GGE.

4

21. In a letter dated June 12, 2007, the Company stated that it had entered into a "strategic supply agreement with GGE to supply solar cells for use in GGE's 'SunCube' product. The letter stated:

> EMCORE Photovoltaics Division has entered into a strategic supply agreement with Green and Gold Energy of Adelaide, Australia to the uninterrupted supply of multi-junction solar cells designed for use in the Green and Gold Sun Cube solar power system. As the largest manufacturer of multi-junction solar cells to the concentrating PV industry, EMCORE is given the opportunity to assess the various CPV system approaches being developed worldwide and it is my assessment that the design of GGE Sun Cube represents a true market advantage in terms of manufacturing cost, performance and ultimately cost of power delivered to the grid. It is my opinion that the Green and Gold Sun Cube is in the best position in the CPV industry to enable large scale (10-50MW) solar farms. [GGE's SunCube terrestrial concentrator system was supposed to convert solar energy into electricity]. To that end, EMCORE has entered into a multi-year strategic supply agreement and has initiated the capital investment necessary to ensure present and future solar cell delivery commitments to Green and Gold Energy.

22. The foregoing statement was false and misleading for the reasons set forth below in greater detail in ¶¶33-35, namely that GGE did not have a plant to build the SunCube and lacked a meter to measure the amount of electricity the unit produced. Emcore either knew these facts or were reckless in not knowing them.

23. On August 29, 2007, Emcore announced a $24 million purchase order for the sale of CPV technology to GGE, stating that it had "been awarded a follow-on production order from Green and Gold Energy (GGE) for 3 million solar cells for use in GGE's SunCubeTM." The press release further stated that "[t]his 105 MW purchase order represents the largest

5

procurement of concentrator solar cells in the industry to date and is a follow-on order to an initial 5 MW order placed earlier this year."

24.     The foregoing statement was false and misleading for the reasons set forth in greater detail in ¶¶33-35, namely that Emcore later admitted that its GGE orders were not serious or valid.  GGE informed Emcore in July 2008 that it would be selling its business through an asset sale and could not commit to make any purchases from Emcore.

25.     The August 29, 2007, press release represented GGE as "a world-leading Concentrator Photovoltaic System ("CPV") system provider" with the "potential for more than 500 MW of annual demand."  (CPV is a high-concentration photovoltaic power generation system using Fresnel Lenses or Rod Lenses; this solar-power system is designed to relieve the problem of silicon shortages).  According to the press release, Green and Gold Energy is a world-leading CPV system provider.  "With strong support from the Australian government, they plan to deploy solar power farms employing their SunCubeTM low-cost CPV system.  GGE is also entering into distribution agreements with several partners, representing a potential for more than 500 MW of annual demand.  The SunCubeTM has been designed to produce power at a cost lower than traditional photovoltaic technologies."

26.     The foregoing statement was false and misleading for the reasons set forth in ¶¶22, 33-35.

27.     On November 1, 2007, Emcore filed its Form 10-K for the year 2006; Form 10-Q for the quarter ended March 31, 2007; Form 10-Q for the quarter ended June 30, 2007; and Form 10-Q for the quarter ended December 31, 2006. Within the filings, the Company made the following representations: "In August 2007, EMCORE was awarded a follow-on order from

Green and Gold Energy (GGE) for three million solar cells for use in GGE's SunCubeTM terrestrial concentrator system.  This 105MW purchase order represents the largest procurement of concentrator solar cells in the industry to date is a follow-on order to an initial 5MW order placed earlier in 2007.  All hardware ordered under this contract is to be shipped by December 2008."

28.     The foregoing statement was false and misleading for the reasons set forth in ¶¶22, 33-35.

29.     On December 14, 2007, Emcore reported that its order backlog was "approximately $149 million as compared to a backlog of approximately $48 million from the prior year."  Emcore emphasized the importance of terrestrial solar power contracts, which included the GGE contract, in that $101 million increase in orders:

> The September 30, 2007 order backlog is comprised of $127 million for our Solar Power segment and $22 million for our Fiber Optics segment.  Within our Solar Power segment, $57 million relates to our satellite solar power business and $70 million relates to our terrestrial solar power business.  The significant increase in order backlog is attributable to the receipt of long-term photovoltaics-related sales contracts, of which approximately $45 million is scheduled for shipment after calendar year 2008.

30.     The foregoing statement was false and misleading for the reasons set forth in ¶¶22, 33-35.

31.     On February 27, 2008, the Company announced that it had "been awarded a follow-on production order of $39 million for additional solar cell receiver assemblies" from GGE.

32.     The foregoing statement was false and misleading for the reasons set forth in

7

¶¶22, 33-35.

## THE TRUTH IS REVEALED

33.     On March 18, 2008, it became known that GGE was not a "world-leading CPV system provider" when it was discovered that GGE did not have a plant in which to build the SunCube, the product in which GGE was supposedly going to use Emcore's CPV solar cells. Furthermore, the prototype SunCube unveiled by GGE in Australia in February had no heavy electrical wires running from the unit, nor did it have electrical load attached nor any meter to measure how much electricity the unit produced, and wobbled in a light breeze enough to take it out of solar alignment.  The "exclusive distributor," Zolar Distributors, has a website but no contact information available.

34.     On March 25, 2008, it was reported that GGE's other customers, including Energies AC Gava of Spain; Eco-Office Ltd. of Malta; Square Engineering Pvt LTD of India; and ES Systems of Korea, all had no substantial Internet presence, apart from their transactions with GGE.

35.     On August 7, 2008, Emcore admitted that GGE orders were not serious or valid. The Company announced that it would remove the $79 million worth of GGE orders from its backlog.  The Company stated in relevant part:

> In July 2008, the Company was informed by its customer Green & Gold
> Energy which is based in Australia, that it was engaged in negotiations
> relating to the sale of its business through an asset sale and, as a result,
> could not commit to making any further purchases under its approximately
> $79 million of CPV-related purchase orders.  The acquirer has indicated
> that they intend to negotiate a new purchase agreement with the Company
> upon consummation of the transaction.  As a result, the Company has
> cancelled production slots reserved for Green & Gold Energy to reflect
> this event and has adjusted the quarter-end backlog accordingly.  As of

June 30, 2008, total CPV-related backlog totaled $53 million.

36. The Company's stock fell on the news from a closing price of $8.99 on March 18, 2008 to a closing price of $6.65 on March 19, 2008 on heavy volume: 11,210,200 shares.

## DERIVATIVE DEMAND FUTILITY ALLEGATIONS

37. Demand on the current Board of Directors of Emcore is excused as futile because all the Individual Directors (who constitute a majority of the Board) face a substantial likelihood of liability for the wrongdoing alleged herein. The Board had an obligation to ensure that all material information was disclosed in a non-misleading fashion in connection with the Emcore's order backlog in terrestrial solar technology. To fulfill this duty, they were obligated to become knowledgeable about GGE's production capacity. Yet they recklessly disregarded this known duty by consciously failing to disclose material information about the Company's order backlog and the production capability of its purported terrestrial CPV customers, including GGE.

38. The Individual Defendants' actions show they acted in bad faith. The Individual Defendants knew the true value of Emcore's order backlog and GGE's lack of production capacity. Demand is further excused because defendants Richards and Hou have been personally named in two securities class actions, alleging that they and others violated the federal securities act by signing and disseminating materially false and misleading information. (*Prissert v. Emcore Corporation, et al.,* 1:08-cv-01190-MV-RLP (D. New Mexico), and *Mueller v. Emcore Corporation, et al.,* 1:09-cv-00133-RHS-RLP (D. New Mexico)).

## Count I

### Breach of Fiduciary Duty: Inadequate Due Diligence

39. Plaintiff incorporates by reference all the prior paragraphs as if fully set forth herein.

9

40.     Defendants had and have a duty to ensure that the Company adopts and follows competent and effective business procedures.

41.     Defendants conducted inadequate due diligence into the business and finances of GGE before signing agreements with the company to produce terrestrial solar technology for Emcore.

42.     Defendants' failure to conduct adequate due diligence into GGE has caused the Company to write off approximately $78 million of Emcore's $86 million order backlog in terrestrial solar technology.

43.     Had Defendants done proper due diligence on GGE, the Company would have been made aware of GGE's inability to produce the required terrestrial solar technology as per their respective agreement.

44.     Plaintiff has no adequate remedy at law.

## Count II

### Breach of Fiduciary Duty:  Failure to Disclose

45.     Plaintiff repeats and realleges ¶¶1 to 38 above as it fully set forth herein.

46.     The Form 10-K for the year 2006, Form 10-Q for the quarters ended March 31, 2007, June 30, 2007, and December 31, 2007 that Defendants filed with the SEC, was materially false and misleading, for the reasons stated in ¶¶33-35.

47.     As a result of the materially false and misleading statements, Emcore was forced to remove $79 million worth of GGE orders from its backlog which has substantially devalued the Company.

48.     Plaintiff has no adequate remedy at law.

## Count III

### Breach of Fiduciary Duty: Failure to
### Disclose the Inability of GGE to Comply with Agreement

49. Plaintiff repeats and realleges ¶¶1 to 38 above as if fully set forth herein.

50. Defendants expressly recognized the harm they were causing the Company's shareholders by failing to disclose GGE's inability to produce Emcore's orders for terrestrial solar technology.

51. Plaintiff has no adequate remedy at law.

## Count IV

### Breach of Fiduciary Duty: Harm to Company
### From Securities Class Actions

52. Plaintiff repeats and realleges ¶¶1 to 38 above as though fully set forth herein.

53. At least two federal securities class actions have been filed (*Prissert* and *Muller*) as of the date of this complaint.

54. These class action lawsuits allege that defendants Adam Gushard, Hong Q. Hou, Reuben F. Richards, Jr., David Danzilio and Thomas Werthan violated the federal securities laws by misrepresenting the Company's backlog in terrestrial solar technology, and GGE's inability to comply with its agreement with Emcore.

55. These class actions subject Emcore to judgments, and to defense costs such as attorneys' fees and expenses, which may materially harm the Company.

56. Defendants' breaches of fiduciary duty have exposed the Company to these lawsuits.

57. Plaintiff has no adequate remedy at law.

## Count V

### **Breach of Fiduciary Duty:  Corporate Mismanagement**

58. Plaintiff repeats and realleges ¶¶1 to 38 as though fully set forth herein.

59. According to an August 7, 2008 statement by Emcore, the Company admitted that its so-called GGE backlog orders were not valid.

**WHEREFORE,** plaintiff prays for judgment as follows:

A. Awarding the Company compensatory damages against Defendants in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law;

B. Awarding plaintiff his costs and disbursements and reasonable attorneys' and experts' fees and expenses; and,

C. Granting such other and further relief as the Court may deem just and proper.

March 11, 2009

                                  **LAW OFFICES OF JON ADAMS**

                                  By:_____
                                    Jon Adams (NM Bar # 17067)
                                    2339 Inez Drive NE
                                    Albuquerque, New Mexico 87110
                                    (917) 842-2595

**Of Counsel:**

**SARRAF GENTILE LLP**
Joseph Gentile, Esq.
11 Hanover Square, 2nd Floor
New York, NY 10005
(212) 868-3610

**VIANALE & VIANALE LLP**
Kenneth Vianale, Esq.
2499 Glades Road, Suite 112
Boca Raton, Florida 33431
(561) 392-4750